IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK MILLIGAN, SR., | ) | |
| ID # 1883403, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:17-CV-1837-L (BH) |
| | ) | |
| DONALD MUNIZ, Warden, | ) | Referred to U.S. Magistrate Judge |
| Respondent, | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

Mark Milligan, Sr. (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed a § 2254 petition for writ of habeas corpus challenging his conviction for murder. The respondent is Donald Muniz, Warden of TDCJ-CID Scott Unit (Respondent).

**A.     State Court Proceedings**

Petitioner was indicted for murder in Cause No. F11-27465 in the 363rd Judicial District Court of Dallas County, Texas. (*See* doc. 23-2 at 13.)[1] He pleaded not guilty, and the case was tried before a jury on October 15-18, 2012.

Petitioner was estranged from his girlfriend (Girlfriend), with whom he had children. She had been living in her sister's apartment, but at the end of October 2011, she began moving into her

---

[1] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

niece's house.  On October 29, 2011, Petitioner took their children to the niece's house.  He argued with Girlfriend about the fact that she had a boyfriend.  Her nephew began fighting with Petitioner, who told the nephew that Girlfriend was cheating, bit him, and stomped on his foot.  Girlfriend called the police, and Petitioner left before they arrived.

Later that night, Girlfriend and the victim went out to celebrate her birthday.  Both were drinking, and they "had quite a few."  Throughout the evening, Girlfriend and Petitioner exchanged "hateful" texts.  She gave the victim Petitioner's cell phone number, and he sent text messages to Petitioner.  The victim and Girlfriend returned to the sister's apartment, where they planned to spend the night.  The victim took a photo of Girlfriend performing oral sex on him and sent the picture to Petitioner's cell phone.

Around 1:00 a.m., Girlfriend and the victim awakened to a loud banging on the door of the apartment, which sounded like someone trying to kick the door in.  The victim answered the door, and Petitioner shot him in the head.  Petitioner then fired at Girlfriend and chased her through the apartment.  When he caught her, he put the gun in her mouth and pulled the trigger, but the gun did not discharge.  She escaped to a neighbor's apartment, and the neighbor called the police.  Petitioner left before the police arrived.  Girlfriend told them what had happened.   Petitioner was located, arrested, and interviewed by a Garland police detective.  Petitioner showed the detective the photo from the victim.  He admitted to the shooting and took the officers to a location where they recovered the gun he had used.  The statement was not introduced into evidence at trial.  *See Milligan v. State*, No. 05-12-01537-CR, 2014 WL 7499050 at *1-2 (Tex. App. – Dallas Dec. 30, 2014). Petitioner also told Girlfriend's sister that Girlfriend was lucky that she did not die because he ran out of bullets.  (*See* doc. 23-11 at 66-67.)

2

The jury convicted Petitioner of murder and found that he acted under the immediate influence of sudden passion arising from adequate cause. He was sentenced to 15 years' imprisonment. (*See* doc. 23-2 at 74.) He filed a motion for new trial claiming that the verdict was contrary to the law and the evidence, and it was overruled. (*See* doc. 23-2 at 79.) The judgment was affirmed on appeal. *See Milligan*, 2014 WL 7499050.

The Texas Court of Criminal Appeals refused a petition for discretionary review. *See Milligan v. State*, PD-0034-15 (Tex. Crim. App. Apr. 22, 2015). Petitioner's state habeas application was signed on January 16, 2016, and received by the court on February 8, 2016. (*See* doc. 23-46 at 5, 29.) On May 17, 2017, it was denied without written order. (*See* doc. 23-38); *see Ex parte Milligan*, WR-28,964-06 (Tex. Crim. App. May 17, 2017).

**B.    <u>Substantive Claims</u>**

Petitioner's habeas petition, received on July 13, 2017, raises the following grounds:

(1) The state habeas court erred by denying his motion for an evidentiary hearing (ground 1);

(2) The state habeas court erred by denying him counsel to develop his claims and obtain records (ground 2);

(3) The state habeas court's decision to deny his ineffective assistance of counsel claims was objectively unreasonable because counsel was ineffective for:

> (a) failing to investigate, obtain records to support, and present a justification defense (ground 3);

> (b) introducing police reports that showed he was guilty into the record at a pretrial hearing, effectively admitting guilt and failing to contest the search of the apartment he claims was his home (ground 4);

> (c) failing to present any defense or subject the state's case to adversarial testing, relying on a mentally distraught person to pass notes during trial; and failing to present evidence that Petitioner lived at the apartment, and that the victim had no right to be there (ground 5);

3

(d) failing to investigate an illegal sentence at the punishment stage and failing to show the jury that the offense was in his home where he had a right to be (ground 8);

(f) filing a frivolous motion for new trial (ground 9); and

(g) prejudicing the defense with certain exhibits and other actions (ground 14);

(5) The state habeas court unreasonably determined that

(a) Petitioner had no right to defend himself, his family, or his property because he was an ex-felon (ground 6);

(b) Petitioner gave up his property rights (ground 7);

(c) Petitioner did not live at the scene of the offense (ground 10);

(d) Petitioner was a felon in possession of a firearm (ground 11);

(e) Petitioner had no legal standing to contest the illegal search of his home (ground 12);

(f) Petitioner would be required to testify in order to bring his defensive issues before the jury (ground 13); and

(g) Petitioner did not support his claims of false, manufactured, or perjured evidence (ground 15); and

(6) The state habeas court erred by not considering facts outside the record (ground 14).

(*See* doc. 3.)  Respondent filed a response, and Petitioner filed a reply.  (*See* docs. 22, 24.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

5

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.  STATE HABEAS PROCESS

In his first two grounds, Petitioner contends that the state habeas court denied him an evidentiary hearing and counsel on state habeas review.

Federal habeas relief cannot be had "absent the allegation by a [Petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The courts entertain federal petitions under § 2254 "only on the ground" that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Courts cannot grant habeas corpus relief to correct alleged errors in state habeas proceedings. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors); *see also Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir. 1999) ("errors in state postconviction proceedings will not, in and of themselves, entitle a Petitioner to federal habeas relief"); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("infirmities in state habeas [and other post-conviction] proceedings do not constitute grounds for relief in federal court").

The denial of an evidentiary hearing in state habeas review is not a basis for federal habeas

6

relief. *See Mathis v. Dretke*, 124 F. App'x 865, 871-72 (5th Cir. 2005). In addition, the Supreme Court has not recognized a right to counsel in state collateral review, *see Manning v. Epps*, 688 F.3d 177, 189 (5th Cir. 2012), and the Fifth Circuit Court of Appeals has held that there is no constitutional right to counsel in state habeas proceedings, *Ruiz v. Quarterman*, 460 F.3d 638, 644 (5th Cir. 2006). Petitioner has not shown that he is entitled to relief on these claims.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams*

*v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## A.    Justification Defense

In ground 3, Petitioner contends that counsel failed to investigate, obtain school and business records to support, and present a justification defense. In grounds 5 and 8, he claims that he was justified in shooting the victim in self-defense, defense of another, or to protect his property, and that school and business records would have supported his justification defense by showing that he lived at the apartment where the offense occurred, and that the victim had no right to be there.

Counsel has a duty to conduct a reasonable investigation or to make a reasonable decision

8

that particular investigations are unnecessary.  *See Moore v. Johnson*, 194 F.3d 586, 616 (5th Cir. 1999). To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial.  *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Counsel submitted an affidavit in response to the claims of ineffective assistance of counsel in Petitioner's state habeas petition for failure to investigate.  It stated that he obtained apartment and school district records:

> [Petitioner] apparently believes that we should have tried to claim that he was the legal owner of [the apartment where the murder occurred]. [Petitioner] believes that if we could have shown that he was a legal resident of that apartment and was living there at the time of the murder, he would have been able to raise several defensive theories and would have been justified in shooting and killing the victim under the law of self-defense, defense of a third person, public duty, necessity, shooting to prevent another's theft at nighttime, or some other theory.

> \* \* \*

> [A]ll of the evidence presented by the state's witnesses was that [Petitioner] was not a resident of that apartment at all, but had merely spent some nights there with his girlfriend.  The trial testimony was that [Petitioner] was living in his trailer [elsewhere] at the time of the murder. [Girlfriend]  also testified to the same thing. [Petitioner] said in his videotaped statement to the police that he was living in the trailer at the time of the offense.

> [T]he apartment lease [attached to the affidavit] that I obtained through investigation shows that the only legal resident of the apartment was [Girlfriend's sister].

(*See* doc. 23-45 at 36, 42, 43.)  Counsel told Petitioner that he could testify in his own behalf about a justification defense, but that he would be subject to cross-examination about his five prior felony convictions.  (*See id*. at 42.)  Another problem was that Petitioner had given a video-taped statement to the police in which he admitted that:

> he was jealous of the relationship his girlfriend was having with the victim, had received taunting phone calls from the victim on the night of the offense, had

> received a photo text from the victim showing [him and Girlfriend] engaged in oral
> sex, had gone to the apartment where they were with a loaded gun, and "lost it" when
> the victim answered the door naked, and had shot the victim.

(*See id.*) Finally, it was a felony for Petitioner, as a felon, to possess a firearm, so the defenses were

unavailable to him.  (*See id.* at 43.)  The state habeas court found that counsel's affidavit was

credible and refuted Petitioner's claims of ineffective assistance of counsel.  (*See id.* at 31.)

Under Texas law, a person is justified in using deadly force if he reasonably believes that

it is immediately necessary to protect himself against another's use or attempted use of unlawful

deadly force, or to prevent another's imminent commission of aggravated kidnapping, murder,

sexual assault, aggravated sexual assault, robbery, or aggravated robbery. Tex. Penal Code § 9.32(a)

(deadly force in defense of person).  A person's belief about whether deadly force is immediately

necessary is presumed to be reasonable under certain circumstances, but the presumption does not

apply if the person who used deadly force provoked the person against whom the force was used or

was "otherwise engaged in criminal activity."  Tex. Penal Code § 9.32(b)(1)-(3).  A person who has

a right to be present where the deadly force is used is not required to retreat before using it, unless

that person provoked the person against whom the force was used or is "engaged in criminal

activity" when the deadly force is used. "  Tex. Penal Code § 9.32(c).

The use of force against another is not justified as self-defense if the actor sought an

explanation from or discussion with another concerning their differences while the actor was

carrying a weapon in violation of Tex. Penal Code § 46.02.  Tex. Penal Code § 9.31(b)(5)(A).  A

person violates § 46.02(a) if he carries a handgun and is not on his own premises or premises under

his control.  Deadly force may be used to protect property if a person reasonably believes that it is

immediately necessary to prevent another's imminent commission of, or flight after the commission

of, arson, burglary, robbery, aggravated robbery, or theft during the nighttime, and the person reasonably believes either that the property cannot be protected or recovered by any other means or that the use of less than deadly force would expose the person to a substantial risk of death or serious bodily injury.  Tex. Penal Code § 9.42 (deadly force to protect property).

Here, Petitioner exchanged "hateful" text messages with Girlfriend, received texts and the photo from the victim, went to the apartment that was not his, banged on the door, shot the victim when he answered the door, and tried to shoot Girlfriend.  He has not shown that the victim did not have a right to be at the apartment with Girlfriend.  Although he contends that her sister signed a lease with Petitioner for his family to live at the apartment, (*see* doc. 3 at 7, 9), he has not presented any lease agreement.  He alleges that school records "contain a proof signed by [Girlfriend] and Petitioner," that they showed that their children lived at the apartment, and that the children were in the care and custody of Petitioner.  (*See id*. at 9.)  He has not presented any school records or shown that even if he resided at the apartment when the school forms or records were prepared, he still resided there on the date of the offense.  He has not shown that school records would have supported his claim that the shooting was justified.  Moreover, he has not identified any evidence showing that he acted in self-defense, defense of a third person, or defense of property.

Petitioner claims that he told the police that the victim "came at him in an [aggressive] manner with a weapon," (*see* doc. 24 at 3), and that a witness testified to his statement that the victim swung at Petitioner when he opened the door, (*see* doc. 23-11 at 111).  He has not shown that his statement to the police would have been admissible.  He has also not identified any the weapon allegedly possessed by the victim, or shown how the victim came at him aggressively and why he could not retreat.  He has not shown that there was any evidence that he reasonably believed that the

use of deadly force was immediately necessary to protect against the victim's use or attempted use of unlawful deadly force, or to prevent the victim's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.  Petitioner has not provided any evidence that he reasonably believed that the use of deadly force was immediately necessary to prevent the victim's imminent commission of, or flight after the commission of, arson, burglary, robbery, aggravated robbery, or theft during the nighttime.

Petitioner chose not to testify, and he has not shown that counsel could have presented any evidence to support a justification defense for the use of deadly force, or that there was any evidence that counsel should have discovered and presented.  Moreover, to the extent that Petitioner sought an explanation from or discussion with the victim about their differences, he has not shown that the use of force was justified.  He has not shown that the apartment was his or was under his control, so counsel could have reasonably believed that Petitioner carried the firearm in violation of § 46.02 and, therefore, the use of force was not justified under § 9.31(b)(5)(A).  Petitioner has not shown that the state court's rejection of this claim was unreasonable.

**B.**     **Introduction of Exhibits**

In ground 4, Petitioner contends that counsel entered into evidence police reports showing he was guilty, including Defense Exhibit No. 2.  He alleges in ground 14 that counsel prejudiced the defense by introducing Defense Exhibit 9, which were school records from the wrong year.

Petitioner cites to a pretrial hearing in which counsel introduced police reports, including Defense Exhibit No. 2, in support of a motion to suppress.  (*See* doc. 3 at 6, doc. 23-8 at 26.)  He has not shown, and the record does not show, that counsel introduced police reports during the trial; they were not before the jury for consideration in deciding guilt.  His claim in ground 14 appears to relate

to his allegation that school records from another year supported his justification defense. As discussed, Petitioner has not shown how school records supported his justification defense. He has not shown that the state court's rejection of these claims was unreasonable.

## C.    Suppression of Search

In ground 4, Petitioner also contends that he did not consent to a search, and there was no search warrant, but counsel failed to contest the search of his home. (*See* doc. 3 at 6.)

Counsel's affidavit stated that Petitioner had no legal standing to object to the search of the apartment because he was not a resident of the apartment and had only spent some nights there with Girlfriend. (*See* doc. 23-45 at 44.) An overnight guest in a home may have standing to challenge a search. *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998). Petitioner and Girlfriend were estranged, and there was no evidence that he was a resident or overnight guest at the time of the search. Counsel could have reasonably believed that he lacked standing to contest the search of the apartment. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## D.    Adversarial Testing

In ground 5, Petitioner also contends that counsel failed to subject the prosecutor's case to adversarial testing because he stipulated to evidence and relied on a mentally distraught person to pass notes during the trial.

Petitioner does not identify the evidence to which counsel stipulated, or the person who passed notes during trial. He has not shown how either affected the outcome of the trial. Petitioner's conclusory claim does not entitle him to relief. *See United States v. Woods*, 870 F.2d at 288 n.3; *Miller v. Johnson*, 200 F.3d at 282. Moreover, counsel stipulated that buccal swabs for testing were obtained from Petitioner and Girlfriend. (*See* doc. 23-10 at 82.) Petitioner has not

shown that the buccal swabs were not obtained, and that there was a reason for counsel not to so stipulate. He has not shown that the state court's rejection of this claim was unreasonable.

### E.    Illegal Sentence

In ground 8, Petitioner also contends that at the punishment stage, counsel failed to investigate an illegal sentence on a third degree felony, and that a 1987 conviction was illegal. (*See* doc. 3 at 8; doc. 24 at 7.) He not allege any facts in support of his allegations, so he has not shown that counsel was ineffective, or that the state court's rejection of this claim was unreasonable.

### F.    Motion for New Trial

In ground 9, Petitioner contends that counsel filed a frivolous motion for new trial to cover his ineffectiveness, and he appears to claim that counsel should have raised other issues in the motion. (*See* doc. 3 at 8.) He claims that he denied assaulting his wife, and the assault case was dismissed. He also alleges that State's Exhibits 20-60 (crime scene photographs and post-offense photographs of Girlfriend) were photo-shopped.

Petitioner's reference to an assault on his wife is unclear, and he does not explain how it was relevant. Counsel's affidavit stated that there was an aggravated assault case against Petitioner for the assault of Girlfriend, but she refused to cooperate and the case was dismissed. (*See* doc. 23-45 at 45-46.) Even if Petitioner is referring to an assault on Girlfriend, he has not shown an issue that counsel should have raised in a motion for new trial. Regarding the crime scene photographs, he does not provide any support for his claim that they were photo-shopped. He has not shown how this was an issue that counsel should have raised, or any other issue that counsel should have raised.

Petitioner's conclusory claim does not entitle him to relief. *See United States v. Woods*, 870 F.2d at 288 n.3; *Miller v. Johnson*, 200 F.3d at 282. He has not shown that the state court's rejection

of this claim was unreasonable.

## V.  STATE HABEAS DETERMINATIONS

In grounds 6, 7, 10, 11, 12, 13, and 15, Petitioner contends that the state habeas court unreasonably determined that he had no right to defend himself, his family, or his property; that he did not have property rights in the apartment; that he did not live at the house where the offense occurred; that he was a felon in possession of a firearm; and that he was required to testify to bring defensive issues before the jury.  In ground 14, he contends that the state habeas court erred by failing to consider facts outside the record in deciding his claims of ineffective assistance of counsel.

Petitioner's claims all appear to relate to his claims that counsel was ineffective for failing to obtain and present evidence in support of a justification defense, challenge the search of the house, and file a nonfrivolous motion for new trial. While he refers generally to school records, tax records, letters, crime lab reports, and "other documents," he has not identified any specific facts outside the record that he raised in his state habeas petition to show that counsel was ineffective. To the extent that he separately challenges the reasonableness of the state court's determinations, he has not shown that its rejection of his claims was unreasonable for the same reasons that he has failed to show that his counsel was ineffective, as discussed.

## A.    Search and Seizuire

In addition, Petitioner contends in ground 12 that the state habeas court unreasonably determined that he had no legal standing to contest the illegal search of his home.  To the extent that he raises an independent claim that the search was unconstitutional, the claim is not cognizable.

It is well-settled that a claim that evidence obtained through an unconstitutional search and seizure was erroneously admitted at trial cannot be a basis for federal habeas relief if the state

provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976). If a state has a process that allows an opportunity for full and fair litigation of Fourth Amendment claims, federal habeas review of those claims is barred, even if a defendant did not use the state process to litigate the claims. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). The State of Texas has a process that allows defendants to litigate Fourth Amendment claims at the trial level and on direct appeal. *Register*, 681 F.3d at 628. Consequently, any independent claim of an illegal search and seizure is barred.

**B.    False, Manufactured, Perjured Evidence**

In ground 15, Petitioner contends that the state habeas court unreasonably determined that he did not support his claims of false, manufactured, and perjured evidence. He contends that none of the bloodstains found at the scene were from him or Girlfriend. He asserts that blood on a towel was said to match Girlfriend, but it did not match and she was excluded as a contributor. He claims that a photograph of Girlfriend (State's Exhibit 52) does not show bruises or cuts, but closeup photographs (States' Exhibits 53-56) show added gun shot wounds. He alleges that a police video and witness statements show that she was not injured. He apparently contends that the photographs of gun shot wounds were false, and that a photograph of the victim (State's Exhibit 9) is photo-shopped. (*See* doc. 3 at 10-11.) Petitioner's reply appears to allege that the autopsy report states that the victim's address was the apartment, which was false. (*See* doc. 24 at 3-4.) Petitioner contends that witnesses lied about whether he was a resident of the apartment. (*See id*. at 11-12.)

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal

defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) it was material. *Id*. at 271. A new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue*, 360 U.S. at 271. Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between a witness's testimony and prior statements or testimony of other witnesses do not establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989). Conflicting testimony is to be resolved by the jury. *See Koch*, 907 F.2d at 531.

A witness testified that a DNA test matched the blood on the towel to Girlfriend. (*See* doc. 23-11 at 46-47.) A blood spot on a wall also matched to her. (*See id*. at 47.) Petitioner has not shown that this testimony was false.

The officer who took the photographs of Girlfriend testified that he observed injuries, including bruising on her arms and one palm, an injury to her cheek, and redness on her neck. (*See* doc. 23-11 at 184.) The photographs do not appear to show gun shot wounds, and there was no testimony that Girlfriend suffered gun shot wounds. Petitioner has not shown that the photographs of Girlfriend were photo-shopped. Petitioner also has not shown that the background photograph of the victim was photo-shopped.

Petitioner has not shown that testimony and evidence that he did not reside at the apartment was false. Regarding the autopsy report, it does not state an address for the victim. (*See* doc. 23-16 at 19-26. He has not shown that the state court's rejection of this claim of false, manufactured, and

17

perjured evidence was unreasonable.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.  Petitioner has not shown he is entitled to an evidentiary hearing.

## VII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 26th day of April, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE